UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
March 10, 2017
David J. Bradley, Clerk

| | |
|---|---|
| Claudia Forsterling, et al., § § Plaintiffs, § § versus § § A&E Television Networks, LLC, et al., § § Defendants. § | Civil Action H-16-2941 |

## Opinion on Dismissal

1. *Introduction.*

    Two television production companies developed a reality show about a pastor convincing prostitutes to leave their trade. A television network broadcast the show. Three of the women whom the production companies filmed claimed that they made promises that they did not keep. The production companies and the network will prevail.

2. *Background.*

    Long Pond Media, LLC, and Relativity TV, LLC, produced a show about a pastor persuading prostitutes to change their occupations. It was called *8 Minutes*. Although eight episodes were filmed, only five aired. A&E Television Networks, LLC, broadcast the show. Gina Mahan and Jeanne Mosby appeared in the show. Claudia Forsterling was filmed for an episode that never aired.

    Before filming her episode, each woman met with the show's originators or with producers from Long Pond and Relativity. Forsterling and Mahan said that they told the producers about their problems, describing medical conditions, struggles to pay rent and support families, and interest in finding better-paying jobs or in returning to school. According to them, the producers promised that they would take care of everything once the women appeared on the show. Forsterling, Mahan, and Mosby said that the producers agreed to blur their faces. Each signed an appearance release allowing Long Pond and Relativity to use her

appearance on the show. Only Forsterling's release noted that her face was to be blurred, and her episode never aired.

Long Pond and Relativity filed for bankruptcy. Forsterling, Mahan, and Mosby petitioned the bankruptcy court to lift the stay, allowing them to pursue their theories of fraudulent inducement and personal injury. They did not mention theories of breach of contract, promissory estoppel, and negligent misrepresentation. The estate owns those claims.

3.  *Waived Claims.*

Forsterling, Mahan, and Mosby waived their fraudulent inducement and invasion of privacy claims in their appearance releases.

4.  *Stay.*

Even if the stay had been lifted on the breach of contract, promissory estoppel, and negligent misrepresentation theories, they are empty.

5.  *Breach of Contract.*

Forsterling and Mahan pleaded that the producers told them that after appearing on the show, they would help them pay the rent, secure better-paying jobs, and pay medical bills. Forsterling, Mahan, and Mosby claimed that the producers said that their faces would be blurred.

The written contracts say otherwise. Each appearance release says that the woman agrees to appear on the show in exchange for a payment. Each also says that it is the complete agreement and supersedes all others.[1] Forsterling's agreement includes a handwritten note – "no face show." Despite Mahan and Mosby's having said that the producers promised not to show their faces, their agreements do not include a similar note.

The written contracts were not breached. Each woman was paid the amount written. Long Pond and Relativity photographed Forsterling with the cash in hand and Mosby with a receipt for the fee. Mahan is not pictured with

---

[1] *See* Restatement (Second) of Contracts §§209, 216, comment e.

her payment, but she does not dispute that Long Pond and Relativity paid her the amount written. As demonstrated by Forsterling's contract, if the producers agreed to blur someone's face, that was included in writing.

Also, the promises as related are too vague to form a contract. Forsterling, Mahan, and Mosby said that Long Pond and Relativity agreed to fix all their problems, from health care to employment to housing. Vague assertions that the production companies would take care of everything do not a contract make.

6.   *Promissory Estoppel.*

Overlooking the fact that Forsterling and Mahan signed appearance releases that did not include what they said the producers promised, they did not plead facts that support direct cash losses from relying on the producers' supposed promises. Their facts support only expectation losses. They said that Long Pond and Relativity promised them help with housing, employment, and medical care and that they did not keep these promises. Even if this were true, Forsterling and Mahan suffered no pecuniary loss. In preparing for their appearances, they did not materially change their positions in a way that caused a direct monetary loss. They lost only what they expected to gain.

7.   *Negligent Misrepresentation.*

As above, Forsterling and Mahan did not plead facts that support pecuniary reliance losses. Despite signing an appearance release to the contrary, Mosby insists that Long Pond and Relativity said that they would blur her face. If true, this is a breach of contract or fraud, not negligence. She has not shown that she lost money by her face appearing on the show.

Also, the promissory estoppel and negligent misrepresentation claims simply recast the fraudulent inducement claim that Forsterling, Mahan, and Mosby waived.

8.   *Emotional Distress.*

Nothing Long Pond and Relativity did was extreme or outrageous. At most, Long Pond and Relativity did two things: they told Forsterling and Mahan

that they would help them with housing, employment, and medical care, then did not; and they told Mahan and Mosby that they would blur their faces, then did not.

Long Pond and Relativity did not set out to harm Forsterling, Mahan, and Mosby. They did what the contracts permitted – included these women in the show.

9.  *Anti-SLAPP.*

The Texas Citizens Participation Act is a statute to counter "strategic lawsuits against public participation" – anti-SLAPP. It is – like failure to state a claim – a ground for dismissal. If the show was on a topic of public concern and Forsterling, Mahan, and Mosby did not plead their claims with clear and specific evidence, the court must dismiss the case.

Forsterling, Mahan, and Mosby sued because of a reality television show. Producing the show was an exercise of free speech on a topic of public concern.[2] This category is not limited to documentaries and newspapers. The show was reality television; the women filmed multiple takes, and the producers dramatized parts of the story. What matters is that the show addressed human trafficking and prostitution, highlighting the potential dangers of the trade. Like other large cities, Houston is a destination for human trafficking, and it has been trying to address the problem. In 2015, the Texas legislature enacted legislation on human trafficking.

Forsterling, Mahan, and Mosby did not establish their case by clear and specific evidence relevant to their legal theories.[3]

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7) (West).

[3] TEX. CIV. PRAC. & REM. CODE ANN. § 27.005 (West).

10. *Alternatives.*

Because Forsterling, Mosby, and Mahan did not plead facts to support plausible legal theories, this case will be dismissed for failure to state a claim.[4]

Conversely, this motion to dismiss followed an amended complaint that the defendants had answered. Taking it as a motion for judgment on the pleadings, Forsterling, Mosby, and Mahan will take nothing from Long Pond, Relativity, or A&E.

11. *A&E.*

A&E only broadcast the show. It did not produce the show. Forsterling, Mahan, and Mosby had no contact with anyone from A&E, nor did they have an agreement with it.

Because Long Pond and Relativity are not vicariously liable, A&E cannot be vicariously liable. Vicarious liability is not a substantive legal theory. A&E will be dismissed.

12. *Conclusion.*

A&E will be dismissed with prejudice. Claudia Forsterling, Jeanne Mosby, and Gina Mahan will take nothing from Long Pond Media, LLC, Relativity TV, LLC, or A&E Television Networks, LLC.

Signed on March 9, 2017, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[4] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).